IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DIANNA RUIZ, MARTHA VIDUSKI,
MARTHA OBONDI and SUE WARNEKE,
on behalf of themselves and a class of
employees and/or former employees
similarly situated,                                              OPINION and ORDER

                                                                        10-cv-394-bbc

                            Plaintiffs,

            v.

SERCO, INC.,

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is a proposed collective action under the Fair Labor Standards Act (FLSA), 29

U.S.C. §§ 201-219.  Plaintiffs Dianna Ruiz, Martha Viduski, Martha Obondi and Sue

Warneke contend that defendant Serco, Inc. violated the FLSA by willfully misclassifying

its employees as "exempt" from the FLSA's overtime requirements and consequently failing

to comply with those requirements.  On June 9, 2011, I denied plaintiffs' motion for

conditional certification of an opt-in nationwide collective action under 29 U.S.C. § 216(b)

because plaintiffs' proposed class definition was too broad, encompassing all of defendant's

employees who "provided support services to members of the military or their families."

Plaintiffs had failed to make even a modest factual showing that they were similarly situated to the individuals covered under the proposed definition and they had not identified a specific common policy or practice of defendants that caused the alleged FLSA violations at issue.  Kelly v. Bluegreen Corp., 256 F.R.D. 626, 629-30 (W.D. Wis. 2009) (at conditional certification stage, plaintiffs must make "modest factual showing" that they are similarly situated to potential class members and that they and potential class members were "victims of a common policy or plan that violated the law").  I gave plaintiffs an opportunity to supplement their motion for conditional certification and to propose a more narrowly defined class.

Now before the court is plaintiffs' supplemental motion for conditional certification, dkt. #79, in which they propose a narrower class definition and provide additional evidence and argument explaining why they believe plaintiffs are similarly situated to potential class members and how defendant uses a company-wide exemption classification system that violates the law.  Also before the court is defendant's motion to strike the declarations plaintiffs submitted in support of their supplemental motion for conditional certification, dkt. #87, and defendant's request for attorney fees incurred in responding to plaintiffs' supplemental motion.

After reviewing plaintiffs' supplemental arguments and evidence, I conclude that they have failed to show that conditional certification is appropriate in this case.  Plaintiffs' evidence does not support a finding that plaintiffs are similarly situated to the potential class

members with respect to job duties and levels of discretion or with respect to the policy defendant used to determine whether they should be classified as exempt. Therefore, I am denying plaintiffs' supplemental motion for conditional certification. This case will proceed on the claims of the named plaintiffs only. With respect to defendant's motions, I am denying its motion to strike and denying its request for fees and costs because neither motion is justified in the circumstances of this case.

In determining whether the class should be conditionally certified, I have considered the allegations in the complaint and the affidavits and depositions that were submitted in conjunction with plaintiffs' initial and supplemental motions for conditional certification.

## FACTS

### A. Defendant Serco's Business

Defendant Serco is a professional services company that provides a wide range of services to a variety of clients, including the United States Department of Defense, and in particular, the United States Army and Army Reserve, Navy, Marine Corps and Air Force. Defendant has entered into many different contracts with these branches of government to provide a variety of support services to members of the military and their families, ranging from clinical and financial counseling to workforce analysis and childcare. Defendant's provision of services to the military are subject to different contractual requirements, different client demands and varying degrees of supervision.

When defendant hires an employee for a particular position, the manager or director of the particular contract works in conjunction with defendant's human resources department to determine the appropriate "labor code" that applies to the position. The labor codes (which are created by defendant and are distinct from the position titles provided by the military) provide "guidance" and a "recommendation" as to whether the position should be classified as exempt or nonexempt. The manager or director then completes an "FLSA worksheet," on which the manager assigns exempt or nonexempt status to the employee.

### B. Defendant's Contracts at Issue in this Case

Plaintiffs' original proposed class included all persons employed within the last three years by defendant in the United States who were classified as FLSA exempt and who assisted members of the armed services and their families to make the transition into and out of active deployment. The proposed class included thousands of employees who worked across the country under approximately 12 different contracts or task orders in approximately 25 different positions.

In their supplemental motion, plaintiffs have amended the proposed class by eliminating several contracts from the class, thereby removing approximately 60 potential locations and at least 6 job titles or positions. Plaintiffs narrowed their proposed class even further in their reply brief, dkt. #91 at 2, by eliminating three more job titles. I will analyze

plaintiffs' certification request by considering the class plaintiffs propose in their reply brief. This class potentially includes approximately 1,000 current or former employees of defendants. The following list shows the number of locations and job titles for the contracts that fall within the amended proposed class:

- **The Army Family Readiness Staff and Support Services contract** (Family Program Assistants, Outreach and Support Specialists, Army Family Action Plan/Army Family Team Building Specialists, Education and Training Specialists, Operations Specialists and Well-Being Specialists at more than 40 locations);

- **The Army Wounded Warrior Program contract** (Advocates/Soldier Family Management Specialists at more than 50 locations);

- **The Army Wounded Warrior Call Center Contract** (Customer Care Representatives at one location);

- **The Commander, Naval Installations Command Fleet and Family Services Program Global Services contract** (employing Work and Family Life Consultants, Education Service Coordinators, Ombudsman Coordinators, Personal Financial Counselors at 5 locations in the United States); and

- **The Fort Polk Task Order; Fort Sam Houston Task Orders and Fort Bragg Task Orders** (Relocation Assistants, Community Education and Marketing Specialists and Mobilization Deployment Specialists at 3 locations).

All of the employees working under these contracts worked in defendant's "Business Unit

23" and performed at least some clerical or support services related to providing family services to members of the armed services and their families.

### C. Experience of Named Plaintiffs

Named plaintiffs Diana Ruiz, Martha Viduski, Sue Warneke and Martha Obondi worked under the Army Reserve Family Readiness Staff and Support Services Contract. The contract's purpose was to provide services in support of the Army Reserve's mission readiness program and to enhance the Reserve's recruiting and retention programs.

Plaintiff Ruiz worked on the contract as a Family Program Assistant and an Army Family Team Building/Army Family Action Plan Program Specialist in Fort McCoy, Wisconsin. Plaintiff Viduski worked on the contract as a Well Being Specialist and Operations Specialist in Fort McCoy. Martha Obondi worked on the contract as a Family Program Assistant in Fort Snelling, Minnesota and Sue Warneke worked on the contract as a Family Program Assistant in Fort Sheridan, Illinois. (Plaintiffs' primary duties are discussed in more detail later in this opinion.)

### OPINION

### A. Defendant's Motion to Strike Plaintiffs' Declarations

Plaintiffs filed two sets of declarations in support of their supplemental motion for conditional certification. In the first set, dkts. #80–83, plaintiffs declare that they

performed duties similar to those of potential class members as described in a list created by plaintiffs' counsel.  The list, attached as Exhibit A to the declarations, describes duties of the various positions encompassed by the proposed class and was created by plaintiffs' counsel by compiling quotes from depositions of defendant's corporate witnesses.

Defendant has moved to strike the declarations on the grounds that (1) the declarations are not based on plaintiffs' personal knowledge; (2) the summary of duties of job positions contained in Exhibit A to each of the declarations is incomplete, misleading and was cobbled together from statements taken out of context; and (3) the declarations directly and materially conflict with plaintiffs' deposition testimony, in violation of the "sham affidavit" rule.

I will deny the motion to strike.  As an initial matter, motions to strike are disfavored in general because they waste time by requiring judges to engage in busywork and judicial editing without addressing the merits of a party's claim.  Custom Vehicles, Inc. v. Forest River, Inc., 464 F.3d 725, 727 (7th Cir. 2006).  Moreover, I disagree with defendant that plaintiffs' declarations are not based on their personal knowledge.  In the declarations, the plaintiffs do not purport to describe the duties of positions that they know nothing about. Rather, plaintiffs were presented a list of certain duties and declared whether they performed duties similar to those on the list.  Whether the list describes accurately the duties of other positions is a different issue and one that defendant was free to challenge, as it did in its brief opposing conditional certification.

Further, it is not clear whether the sham affidavit rule applies outside the summary judgment context. Sjoblom v. Charter Communications, LLC, 571 F. Supp. 2d 961, 969 (W.D. Wis. 2008) (rule not applied when court was not deciding summary judgment motion and witnesses were deposed after affidavits were filed). Even if it were appropriate in some situations to disregard inconsistent testimony under the sham affidavit rule in the context of conditional certification, the inconsistencies between plaintiffs' deposition testimony and their declarations are not sufficiently contradictory to support a finding that the declarations are shams or plainly incredible. Patton v. MFS/Sun Life Financial Distributors, Inc., 480 F.3d 478, 488 (7th Cir. 2007) (district courts should not disregard testimony unless contradiction is unmistakably clear and later testimony is "plainly incredible").

Finally, it is unnecessary to strike plaintiffs' declarations because they do not affect the outcome of the motion. Even considering them, I conclude that plaintiffs have failed to establish that they are similarly situated to potential class members.


### B. Conditional Certification of FLSA Collective Action

Plaintiffs are seeking conditional certification of the following class:

[A]ll current and former employees of Defendant employed in the United States during the last three years in Business Unit 23 (and its predecessor or successor unit designations)—who held:

(a) any of the positions held by Plaintiffs: Army Family Action Plan/Army Family Team Building Specialist, Family Program Assistant/Family Readiness Program Assistant, Well Being Specialist, Operations Specialist; and/or

> (b) any of the following positions that entail[ed] the performance of similar duties (all of which Defendant misclassified as exempt): Education and Training Specialist, Education Service Facilitator, Marketing and Advertising Specialist, Mobilization Deployment Specialist, Mobilization Support Specialist, Ombudsman Coordinator, Outreach and Support Specialist, Personal Financial Counselor, Relocation Assistant, and those who work in the Army Wounded Warrior Program or the Wounded Warrior Call Center.

Plts.' Reply Br., dkt. #91, at 21.

Plaintiffs contend that defendant violated the FLSA by classifying employees in these positions as administratively exempt from the overtime requirements under 29 U.S.C. § 213(a)(1). (Under § 213(a)(1), "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the overtime requirement of 29 U.S.C. § 207(a)(1)).

As I explained in the June 9 order, because plaintiffs contend that defendant misclassified them as exempt, they must make a modest factual showing that the individuals they seek to represent are similarly situated with respect to factors relevant to the exemption analysis. An employee qualifies for the FLSA's administrative exemption if the employee's primary duty is (1) "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and (2) "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Thus, plaintiffs must demonstrate that potential class members in the positions listed above shared sufficiently similar duties and

levels of discretion and independent judgment so as to make it possible to determine collectively whether defendant classified them improperly.  Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1271 (M.D. Ala. 2004) ("the 'similarly situated' inquiry in this case must be analyzed in terms of the nature of the job duties performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt"); Aguirre v. SBC Communications, Inc., 2006 WL 964554, *12 (S.D. Tex. Apr. 11, 2006) (holding that to determine whether employees are similarly situated in a misclassification case, court must consider employees' duties, amount of time spent on duties and extent of discretion exercised).  As I have explained in this and other cases, plaintiffs may demonstrate that they are similarly situated by demonstrating that they and potential plaintiffs had the same primary job duties and were victims of a common policy or plan that violated the law.  Kelly, 256 F.R.D. at 629.

1.  Job duties and levels of discretion

　　According to plaintiffs, they are similarly situated to members of the proposed class of defendant's employees because they all performed basic support and clerical duties in furtherance of Business Unit 23's contracts.  Plaintiffs contend also that despite the divergence in job titles and work locations, none of the potential class members were required to exercise discretion and independent judgment in matters of significance in order to perform their primary duties.  Thus, plaintiffs contend, it would be simple for the court

or a jury to determine collectively that defendants misclassified the class members.

The problem for plaintiffs is that the evidence in the record does not support their arguments. The proposed class includes approximately 1,000 employees working in 15 different positions under different supervisors and in different locations around the country. Although the evidence shows that employees working in the various positions performed some similar or overlapping tasks, the evidence does not demonstrate that the *primary* duties of the potential class members are sufficiently similar or that they exercised similar levels of discretion and responsibility while carrying out their primary duties.

For example, in arguing that their duties were similar to those of Education Support Facilitators, a position falling within the class definition, plaintiffs argue that they aided military personnel with the transition from service to civilian life, helped them prepare their résumés and job searches and provided training regarding stress management, time management, budgeting and finances. Ruiz Decl. ¶ 22, dkt. #98; Viduski Decl. ¶ 19, dkt. #99; Obondi Decl. ¶ 17, dkt. #100; but see Warneke Decl. ¶ 19, dkt. #101 (stating that she did not perform duties similar to Education Support Facilitators). However, although both plaintiffs and Education Service Facilitators aid military personnel in a general sense, the primary duty of the Education Service Facilitator is to develop curricula for the various programs provided by the Navy's Fleet and Family Support Centers. Moreover, employees in this position have discretion to develop training curricula for such programs that are based on the local needs of the area in which they are employed. Tarpley Dep., dkt. #90-7, at 26-

36 ("[S]ome may provide training on transition issues, others may develop training materials for parents on how to deal with children who have been traumatized by a devastating hurricane or typhoon . . . They do the research. They identify what the content should be. They write the content. They develop the materials. . . ."). Tarpley Decl. ¶ 8, dkt. #67. In contrast, plaintiffs deny that they developed curriculum or training materials, alleging that when they gave presentations or training, they merely provided information that had been prepared by someone else. Obondi Dep., dkt. #90-1, at 190-191; Ruiz Dep., dkt. #90-2, at 53-54 ("We might also do some training . . . [b]ut the training was already prepared. All we did was regurgitate everything."); Warneke Dep., dkt. #57-7, at 209-10 (gave only pre-prepared slide presentations).

Similarly, although plaintiffs contend that they are similarly situated to Personal Financial Counselors, employees in this position are certified to provide "one-on-one financial counseling related to an individual's financial problems." Tarpley Dep., dkt. # 90-7, at 24, 60-62; Tarpley Decl. ¶ 9, dkt. #67. Plaintiffs concede that they were not certified financial counselors, did not provide individual financial counseling and merely referred individuals to certified financial counselors. Obondi Decl. ¶ 16, dkt. #100; Ruiz Decl. ¶ 16, dkt. #98; Viduski Decl. ¶ 18, dkt. #99; Warneke Decl. ¶ 18, dkt. #101.

As a final example, plaintiffs contended that they are similarly situated to Community Education and Marketing Specialists because like plaintiffs, employees in this position "marketed" family and support services to military families and civilian entities. Obondi

Decl. ¶ 11, dkt. #100; Ruiz Decl. ¶ 16, dkt. #98; Viduski Decl. ¶ 13, dkt. #99; Warneke Decl. ¶ 13, dkt. #101. However, employees in this position are "highly-skilled graphic design artist[s]" who, with little direction, prepare "magazine-quality brochures," booklets, Power Point presentations and a website to market defendant's programs. Bako Decl. ¶ 20, dkt. #65. Plaintiffs have presented no evidence that they performed similar tasks requiring similar levels of skill or discretion. (I note that plaintiffs conceded in their reply brief that the duties of some positions encompassed within their amended class are not sufficiently similar to the duties of plaintiffs and other potential class members. Thus, in response to specific arguments made by defendant, plaintiffs withdrew their request to include the Financial Coordinator, Troop Trainer and Lab Technician positions. By including these positions in their amended class definition before determining whether the primary responsibilities of these positions are sufficiently similar to their own, plaintiffs have provided evidence that their proposed class is not narrowly tailored to encompass only those employees who are similarly situated to plaintiffs.)

Rather than address these problems directly, plaintiffs argue repeatedly that denying conditional certification on the basis of "the differences in job titles, contracts, work locations, and levels of experience, responsibility and discretion" would be imposing "too strict a reading of the term 'similarly situated' for the purposes of conditional certification." Plts.' Supp. Br., dkt. #79, at 13. Plaintiffs contend that it is enough for them to show that they and the potential class members shared some similar job duties and were all

13

misclassified as exempt.

Although "[t]he requirements of conditional certification are lenient," Witteman v. Wisconsin Bell, 2010 WL 446033, *1 (W.D. Wis. Feb. 2, 2010), plaintiffs have not provided enough evidence to satisfy their burden at this stage. The Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) is instructive on this point. Although collective actions under the FLSA are not subject to the provisions generally associated with class actions under Fed. R. Civ. P. 23 (such as numerosity, commonality and typicality), the Court's discussion of the propriety of class actions generally provides guidance in deciding when certification of a collection action under the FLSA is appropriate. In Dukes, the Court noted that "[w]hat matters to class certification . . . is not the raising of common 'questions —even in droves— but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. (emphasis in original; internal citations omitted). Thus, it is not enough for plaintiffs to raise a common question as to whether they and other employees with some similar job duties were properly classified as exempt. Rather, the answer to that question must be susceptible to proof that can be extrapolated to the class plaintiffs seek to represent. In this case, it would be difficult to generate common answers in light of the individualized inquiries arising from the wide variations in duties, experience, responsibility, discretion and supervisors on the part of the potential class members.

In sum, although plaintiffs' proposed class is narrower than their initial proposal, the class definition continues to include potential class members whose primary job responsibilities and levels of discretion vary significantly from those of plaintiffs. It is these primary duties that matter ultimately for the exemption analysis. Thus, under the proposed definition, it would be impossible to determine on a collective basis whether the class members are classified properly.

2. Common policy or plan

Even if plaintiffs could satisfy their burden of demonstrating that they and the potential class members performed similar duties and exercised similar degrees of judgment and discretion, I would deny plaintiffs' motion because they have failed to show that they and potential class members were victims of a common policy or plan. In the order denying plaintiffs' initial motion for conditional certification, I concluded that the evidence in the record suggested that exemption determinations for defendant's employees are made by individual project managers either on the basis of the employee's job title or on the basis of the individual's job duties, and not pursuant to a single decision by defendant to classify all employees or certain job categories as exempt. Plaintiffs disagree with that conclusion, arguing in their supplemental motion that defendant makes a corporate-level determination that all persons assigned certain labor codes will be classified as exempt and that managers in the field merely check boxes next to predetermined exemptions without any inquiry into

the actual duties that employees will perform.

Plaintiffs point to three pieces of evidence in support of their theory. First, Alice Tarpley, a program director with supervisory responsibility for several of defendant's contracts, testified that when defendant wins a contract that requires the creation of "new" positions, she works with human resources to determine the labor code under which the positions should fall. Tarpley Dep., dkt. #90-7, at 40-41. Tarpley testified that the labor code identifies whether the position is exempt or nonexempt and thus "[human resources] has already made a determination about whether or not [the new positions are] exempt [or] nonexempt." Id. Plaintiffs contend that this method of assigning labor codes to positions at the corporate level is "the lynchpin to [defendant's] common policy or practice that resulted in the misclassification of the employees in the putative class." Plts.' Supp. Br., dkt. #79, at 6.

Tarpley's statements do not permit the drawing of an inference that defendant has a company-wide policy that results in misclassification of employees. Her discussion was limited to the human resources department's involvement in categorization of *new* positions on *new* contracts that she manages. Tarpley's testimony does not contradict the undisputed testimony of other program directors or the human resources manager who testified that the labor codes provide guidance about whether certain positions are typically classified as exempt or nonexempt, but that employee's director or manager makes the actual decision about how a specific employee should be classified and what particular labor code should be

16

assigned to the employee. Curtin Dep., dkt. #90-8, at 166-168; Bako Decl. ¶ 5, dkt. #65 (explaining that employee's manager or director assigns employee to particular labor code at time employee is hired on basis of requirements of position and discussion with human resources department); Garcia Decl. ¶¶ 6, 7, dkt. #66 (same); Tarpley Decl. ¶ 4, dkt. #67 (same).

Plaintiffs also point to the FLSA worksheets completed by managers or project directors as support for their argument that defendant uses an unlawful company-wide policy that results in misclassification. The FLSA worksheets contain descriptions of various exemptions and direct the manager or project director to check a box next to a particular exemption. There is no space on the worksheet for the managers to explain why they classify particular employees or positions as exempt. Moreover, plaintiffs contend, the fact that defendant's corporate witnesses could answer without hesitation whether particular positions were classified as exempt or not suggests that the low-level managers who allegedly make the exemption determinations on a case-by-case basis are not actually making these determinations on an individual basis. See, e.g., Garcia Dep., dkt. #74-3, at 42 (testifying that all employees under Army Reserve Family Readiness Staff and Support Services Contract were classified as exempt). Thus, plaintiffs contend, it can be inferred that managers "merely check-off the boxes next to the pre-determined exemption without any inquiry into the actual duties that the employee will perform/is performing." Plts.' Supp. Br., dkt. #79, at 10.

Plaintiffs' assertion is supported by little more than speculation. The corporate witnesses were asked about the exemption status of employees in various positions under specific contracts they managed at specific locations. They were not asked how the exemption determinations were made. The fact that they could answer whether these employees were classified as exempt does not support a conclusion that defendant makes *company-wide* exemption determinations for certain positions. Rather, the testimony of these corporate witnesses supports the conclusion that the process of assigning labor codes and exemption classifications is performed by managers and directors on a decentralized basis. For example, these corporate witnesses testified that individuals holding the same position on the same contract may be assigned different labor codes by their managers and that individuals assigned to the same labor code may be assigned different exemption classifications. Curtin Dep., dkt. #90-8, at 166-68 (human resources department suggests that Family Readiness Assistant should generally be classified as nonexempt, but plaintiff Ruiz's supervisor classified her as exempt when she held that position); Garcia Decl. ¶ 7, dkt. #66 ("Because we undertake this process separately for each individual or position, there may not be a correlation or consistency between [labor codes] and the [position titles]," resulting, for example, in Outreach and Support Specialists on same contract being assigned different labor codes); Obondi Dep., dkt. #90-1, at 75-76; Curtin Dep., dkt. #90-8, at 106-107, 166-168 (when plaintiff Obondi held labor code "Family Readiness Assistant," she was classified as nonexempt, but plaintiff Ruiz was classified as exempt when assigned same labor

code); Bako Dep., dkt. #57-2, at 55, 85 (Relocation Assistant at Fort Sam Houston classified as nonexempt while Relocation Assistant at Fort Polk is classified as exempt).

As the Supreme Court explained in Dukes, a company-wide policy giving discretion to local managers or program directors is not a "policy" capable of evaluation on a class-wide basis. Dukes, 131 S. Ct. at 2554 ("policy of *allowing discretion* by the local supervisors over employment matters . . . is just the opposite of a uniform employment practice . . . it is a policy *against having* uniform employment practices").

Plaintiffs' final argument relates to defendant's biennial compensation review process, during which defendant sends questionnaires to employees in various positions with inquiries about their job duties and the percentage of time they spend on each duty. Defendant uses these questionnaires to determine whether employees are classified properly as exempt and are slotted correctly into the appropriate job. Plaintiffs contend that this compensation review process is insufficient to insure that employees remain classified properly after the duties of their jobs change because the employees who receive the survey are not picked randomly and defendant does not evaluate each employee individually to determine whether the employee should be reclassified.

The main problem with this argument is that it raises an entirely new theory of liability that is unrelated to the initial classification determination made by project managers. Under this new theory, plaintiffs contend that even if defendant classifies employees properly when they are hired, defendant fails to monitor them to insure they

19

continue to perform duties that satisfy exemption classifications. Plaintiffs have adduced no evidence that any potential class members fall under such category, and even if they had, it would not support plaintiffs' contention that they and potential class members were victims of a common unlawful policy. Rather, it would suggest that plaintiffs' and the potential class members' alleged misclassifications were caused by multiple policies or practices of defendant.

In sum, plaintiffs have not satisfied their burden to show that they and potential class members are similarly situated. Therefore, I will deny plaintiffs' supplemental motion to certify a nationwide class of employees working under defendant's Business Unit 23's contracts.

3. Alternative class

In their supplemental brief, plaintiffs suggest that if the court finds their requested class to be overbroad, the court should certify a class limited to the positions held by plaintiffs. Thus, the class would include all current and former employees of defendant who held the position of "Army Family Action Plan/Army Family Team Building Specialist, Family Program Assistant/Family Readiness Program Assistant, Well Being Specialist or Operations Specialist." (Plaintiffs do not say how many potential class members are encompassed by this class, but the contract under which plaintiffs worked employs people at more than 40 locations.)

Plaintiffs have not shown that they are similarly situated to the potential class members in this alternative class. Even in this significantly narrowed class, plaintiffs have not shown that all potential class members performed sufficiently similar job duties such that it could be determined collectively whether they were classified properly as exempt. For example, plaintiff Viduski, who held the positions of Well Being Specialist and Operations Specialist, characterized her position as "party planner" and "answering service," and testified that she primarily performed "data entry" and had little direct contact with soldiers and their families. Viduski Dep., dkt. #63-3, at 36-37. She stated that her duties differed significantly from those performed by her daughter, plaintiff Ruiz, who held the positions of Family Program Assistant and Army Family Team Building/Army Family Action Plan Program Specialist, and worked closely with soldiers and their families. Id. at 40-41; see also Ruiz Dep., dkt. #90-2, at 92, 97 (duties included, among others, calling families of deployed soldiers to listen to their concerns and provide them with information, providing mobilization briefings to soldiers and their families, assisting family readiness groups and assisting soldiers and their families on budget matters and job searches).

Similarly, although Ruiz and Obondi both held the Family Program Assistant position, Obondi did not perform two of the duties that Ruiz identified as primary duties of her position, namely, providing briefings to soldiers and their families and providing training to family readiness groups. Compare Ruiz Dep., dkt. #90-2, at 92 (duties included providing mobilization briefings, calling families of deployed soldiers, assisting in starting

21

"family readiness groups" and training "family readiness groups") <u>with</u> Obondi Dep., dkt. #90-1, at 182, 186-87 (did not provide briefings or training to family readiness groups). Thus, even where two individuals held the same job title, their day-to-day activities may vary depending on the local needs the particular location.

Finally, even if plaintiffs had shown that the primary job duties of the potential class member in this alternative class were sufficiently similar with regard to the levels of discretion, experience and responsibility, plaintiffs have not shown that defendant used a company-wide policy to classify plaintiffs as exempt or nonexempt or that it was the same manager or supervisor who made the classification decision for plaintiffs and potential class members. In fact, although plaintiffs Ruiz and Obondi worked under the same contract as Family Programs Assistants (although at different locations), their FLSA worksheets were completed by different managers. Dkt. #84-1 (Ruiz's FLSA worksheet completed by Barbara Freeman); ##84-2, 84-3 (Obondi's FLSA worksheets completed by Brenda Laughlin).

Accordingly, I am denying plaintiffs' request to certify an alternative class composed of employees who held the same positions as plaintiffs. The case will proceed on the named plaintiffs' claims only.

4. <u>Attorney fees</u>

Finally, defendant has moved for costs and fees incurred in responding to plaintiffs'

supplement motion under 28 U.S.C. § 1927, which authorizes sanctions against an attorney who "multiples the proceedings in any case unreasonably and vexatiously." The Court of Appeals for the Seventh Circuit has explained that a court may impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," Pacific Dunlop Holdings, Inc. v. Barosh, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is "without a plausible legal or factual basis and lacking in justification," id.; or "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." Kapco Manufacturing Co. v. C & O Enterprises, Inc., 886 F.2d 1485, 1491 (7th Cir. 1989). See also Jolly Group, Ltd. v. Medline Industries, Inc., 435 F.3d 717, 720 (7th Cir. 2006).

I will deny the request. Plaintiffs filed their supplemental motion for conditional certification after I instructed them to narrow their proposed class and provide additional evidence and arguments showing the propriety of a collective action in this case. Although ultimately I am not persuaded that plaintiffs' claims and those of potential class members should be resolved collectively, plaintiffs' motion was not "unreasonable," "vexatious" or "implausible."

I add one final note regarding the tone of the briefs that have been filed thus far in this case. Too often the parties have been relying on hyperbole, inflammatory language and name calling when making their arguments. Language like this does not help to persuade a court and may actually detract from the substance of an argument. In the future, the

parties and their counsel would be well advised to focus on the facts and law in their briefs and not spend their time criticizing opposing counsel.


ORDER

IT IS ORDERED that

1.  The supplemental motion for conditional certification, dkt. #79, filed by plaintiffs Dianna Ruiz, Martha Viduski, Martha Obondi and Sue Warneke is DENIED.

2. Defendant Serco, Inc.'s motion to strike plaintiffs' supplemental declarations, dkt. #87, is DENIED.

3.  Defendant's request for attorney fees and costs is DENIED.

Entered this 5th day of August, 2011.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge